Smith et al. v. Stafford.

---

## FRANK C. SMITH ET AL.

### v.

## FRANK B. STAFFORD.

1. INSTRUCTION—CONTRACT—EVIDENCE TENDING TO SHOW ABANDONMENT OF WORK.—Where it was incumbent upon appellee to show either a substantial performance of the terms of a contract within the time fixed or a sufficient reason for a failure, or a voluntary acceptance by appellants of the work as done, an instruction which withdrew from the consideration of the jury all of appellants' evidence tending to show that appellee abandoned the work before its completion without good cause, was improper.

2. EXCESSIVE VERDICT.—The verdict in this case is excessive as certain payments by orders were not deducted from the amount of appellee's bill.

APPEAL from the Circuit Court of Knox county; the Hon. ARTHUR A. SMITH, Judge, presiding. Opinion filed February 29, 1884.

Mr. R. C. HUNT and Mr. GEORGE W. THOMPSON, for appellants; that a contract must be completed before recovery can be had, cited Hensell v. Erickson, 28 Ill. 257; Guerdon v. Corbett, 87 Ill. 272; Knickerbocker Life Ins. Co. v. Sceleman, 83 Ill. 446; Bassett v. Child, 11 Ill. 569; Holmes v. Stummel, 15 Ill. 412.

Mr. F. S. MURPHY, for appellee.

PLEASANTS, J. Appellants having contracted with the Peoria & Farmington Railway Co. to grade that portion of its road lying between Monmouth and Keithsburg, sublet a section of three miles to the appellee, who, in September, 1882, brought this action before a justice of the peace to recover a balance claimed for his work done thereon. The trial, on appeal to the circuit court, resulted in a verdict for plaintiff for $175, on which, after a motion for a new trial had been overruled, judgment was entered, and defendant appealed.

Appellee's agreement, made June 14, 1881, was to do the work contemplated and receive payment therefor in the manner and according to the terms, conditions and specifications of the original contract, of which a printed copy was attached, and its provisions, as far as applicable, made binding upon him.

This provided, among other things, that the work should all be done subject to the general direction and orders of the company's engineer as given from time to time, and to his satisfaction and acceptance; that between the first and tenth days of each month the contractor should furnish to the company his time book, verified, with duplicates of all orders issued by him against it in payment for labor, which orders the company might pay and charge to him, and that he should not pay for any labor except in such orders, although he might cash them himself after they were issued and properly indorsed; that about the first day of each month approximate

estimates of the work done during the one preceding should be made, and on or before the twentieth, upon the engineer's certificate thereof, paid for to the contractor, less fifteen per cent., and the amount of all labor orders issued by him during that month. The fifteen per cent. was to be retained until the final completion of the contract and acceptance of the work, which was to be commenced within twenty days and completed on or before the first day of October, 1881.

Appellee commenced the work in the latter part of June and continued until some time in the first week of September, when he left it unfinished and never resumed. He claims that he had substantially finished it as far as the grade stakes had been set, and that the engineer, although requested by him, neglected to lay out further work, so that he was compelled, without his fault, to leave it as and when he did. He · further claims that he had subcontracted a portion to J. A. Giles, who continued to work until October 1st, when he and all the other contractors were, by the company and with the consent of appellants, ordered to suspend; but it is not claimed that he ever did, by himself, through Giles or otherwise howsoever, complete the work he contracted to do.

Appellants set up these defenses: First, that they had paid him nearly all that he could be entitled to in any view of the case, by labor orders issued to him and his men, and had the right to pay the small balance remaining *pro rata* to the men; and secondly, that he abandoned the work before it was completed and before the time fixed by the contract for its completion, without any justifying cause, and for no reason except · that he found it to be, as he conducted it, unprofitable; that he had not substantially finished it to the point where he was · when he left, and that the engineer had then complied with his request and staked out a thousand feet beyond it; that Giles' work was done under contract, not with appellee, but with appellants, made after and because appellee had refused to go on, and that they paid Giles in full.

Smith testified that appellee refused to proceed because he was dissatisfied with the engineer's measurement of what he had done, and not because more work was not laid out for

him; and the engineer, that he staked out, for grading, an additional thousand feet very soon after he was requested and before appellee left; which the latter denied.

What the jury thought of this testimony, or whether they deemed it important to find as to the fact thus disputed, may be doubted, since they were instructed on behalf of the plaintiff, "that if they believe, from the evidence, that Giles was a subcontractor under the plaintiff, Stafford, and entered upon the work belonging to Stafford, with Stafford's consent, and with the consent of Smith & McFarland, and continued to so work on said job until the 1st of October, 1881, and that on that day there was a general order suspending all work on the line of the road, and Giles was so notified as the order of the railway company, and assented to by defendants, Smith & McFarland, and in that way prevented the plaintiff from prosecuting the work and finishing said contract, then the plaintiff is not in default, and is entitled to recover any balance due on the contract for work already done, and the jury will find for the plaintiff."

Being bound by his contract to complete the work on or before October 1, 1881, it is manifest that an order of suspension issued on that day could not have abbreviated the time allowed, nor, of itself alone, have deprived him of any opportunity or means of fulfillment to which he was entitled under that contract. So that if he was then in default, of whatever character or to whatever extent, the order alone could not relieve him. Nor do we perceive the bearing, in this connection, of the subcontract with Giles and his entering and continuing upon the job as stated in the instruction, though made and done with defendants' consent; for these facts would not work an extension of the time for performance, nor any other change in appellee's contract with them. The proposition, then, in substance, is, that if Giles was a subcontractor under plaintiff, and worked on his own job, with defendants' consent, until the time fixed for the completion of plaintiff's contract with them, and then the company, with their assent, ordered a general suspension, they are liable to plaintiff for all that had been done under his contract with them, no mat-

ter how far short of compliance with it or who was responsible for such shortcoming. We think it was incumbent on him to show either a substantial performance within the time fixed, or a sufficient reason for the failure, or a voluntary acceptance by appellants of the work as done; and therefore that this instruction was too broad and unqualified. It withdrew from the consideration of the jury all the evidence on the part of the appellants tending to show that he abandoned the work before its completion and without good cause.

We discover no other error, in respect to instructions, of which appellant can complain. The one numbered 3, asked by them and refused, was in substance a repetition of another which was given, and the one numbered 6 was not applicable to the case between these parties without material qualification.

For proof of the amount of his claim, except for what was done under Giles, appellee relied solely on a statement of the account given him, a month or two after he quit, by appellant Smith—calculated, on the engineer's final estimate of the amount and class of work done, at $1,111.11, and showing, by deduction of "15 per cent." and payments for July and August, a balance in his favor of only $3.82. (The abstract, by error in addition and subtraction, makes, and appellee understood it to be, $2.02 the other way.) He does not deny the payments so shown, but claims that the contract having been terminated by their own fault, they have no legal right to retain any portion of what had been earned by him; and the 15 per cent. shown by this statement was $165.93. It is conceded that the statement was wrong in that it calculated certain of the work mentioned at 10c per cubic yard instead of 10$\frac{1}{2}$, the price fixed by the contract, making an error against him of $19.16. It is also shown beyond doubt that appellants·paid Giles' men all that was earned by him except $28, of which appellee claims one half, or $14.

He would thus be entitled to $1,144.27, less the amount of payments stated ($341.86 for July and $600 for August), $941.86, being $202.41, which without interest exceeds the verdict by $27.41.

But it appears from the evidence that the payments for August as given in this statement were considerably less than were actually made. This is shown by the positive testimony of Smith, confirmed by the stubs from the order book which were produced, showing the name of the payee and amount of each order with the month for which it was issued, and aggregating $737.90. He issued every one of them, but thinks he did not have the stubs when he made out the statement; and the round even number ($600) would indicate that he made it from recollection only and without attempting to be accurate—just large enough to show, as he thought, that nothing was payable to appellant, and small enough to be certainly within the true amount. There was no contradiction of his testimony on this point, nor anything in the case to justify the slightest doubt of its truth.

Counsel argue, however, that these orders were issued without the consent of appellee and therefore should have no effect as against him, and that it was necessary to show also that they had been paid or accepted by the railroad company.

As has been stated, the original contract provided that payment to the laborers should be made in this way and no other, and that the orders should be reported monthly to the company and be first paid out of the amount due the contractor as far as it would reach. This was required in order, doubtless, to avoid the annoyance of labor liens. The right and duty of appellants to issue them grew out of the contract, and not out of the statute which counsel labors to show would not sustain them. The subcontract of appellee recognized and assented to this provision. Appellee so understood it. He testified that he furnished appellants from month to month his time roll showing the names of all his men, the wages per day and number of days work of each—to enable them to comply with this requirement and to issue these orders. He understood that they were issued. He speaks of this arrangement as the settlement he made with his men and says it was all the settlement that could be made. It appears also that he himself received one of these or-

ders for July, for $50, and he does not intimate that it was not paid. Not one of them is shown to have been returned to appellants.

These facts sufficiently prove that they were issued with the knowledge and consent of appellee, and *prima facie* that they were paid by the company out of appellants' funds.

Smith also testified, without contradiction, that appellants paid the further sum of $9.50 on account of appellee for board and shovels. From the amount of appellee's work, $1,144.27, there should have been deducted the amount of these payments,—by orders for July, $341.86, and for August $737.90, and by cash $9.50, in all $1,089.26,—which would leave a balance of only $55.01, or $119.91 less than the verdict. For this excess in the finding, wholly unsupported by evidence, the motion for a new trial should have been allowed.

The judgment of the circuit court is reversed and the cause remanded.

Reversed and remanded.